## COMMONWEALTH *vs.* DEREK LATNEY.

No. 96-P-2058.

Hampden. November 18, 1997. - March 16, 1998.

Present: BROWN, SMITH, & LAURENCE, JJ.

*Practice, Criminal,* Required finding. *Breaking and Entering. Larceny.*

Evidence at the trial of indictments for breaking and entering a building in the daytime and larceny in a building, including circumstantial evidence and inferences, was sufficient to warrant submission of the case to the jury. [424-426]

INDICTMENTS found and returned in the Superior Court Department on July 13, 1994.

The cases were tried before *Bertha D. Josephson,* J.

*John F. Dalsey* for the defendant.

*Jennifer S. Brand,* Assistant District Attorney, for the Commonwealth, submitted a brief.

LAURENCE, J. The defendant was convicted of breaking and entering in the daytime with the intent to commit a felony, G. L. c. 266, § 18, and larceny in a building, G. L. c. 266, § 20. On appeal, he alleges that the Commonwealth's evidence was legally insufficient to submit to the jury. We affirm.

We briefly recite the pertinent facts in the light most favorable to the Commonwealth. See *Commonwealth* v. *Hilton,* 398 Mass. 63, 64-65 (1986). On the morning of June 23, 1994, police officers arrested the defendant approximately two hundred yards from a house located at 17 Green Street in Springfield. At the time of his arrest (which is unchallenged on appeal), the defendant was pushing a lawnmower on top of which was resting a plastic bag containing twenty-one unopened cans of Falstaff beer. The officers testified that the beer was cold. During a postarrest inventory search, a number of pieces of women's jewelry were found in the defendant's pockets.

One of the officers transported the defendant to the station house, subsequently returned to 17 Green Street, and met with Thomas Dufault and the other officer. Dufault explained that the house, which was his childhood home, had belonged to his mother, who had recently died, and that he was caring for it. Dufault stated that he had visited the house two days before and had locked and secured all of the doors when he left.

Upon inspection of the house, the officers noted that several of the doors had been forced open. In addition, Dufault testified that there were dirt and grass tracks on the floor consistent with someone pushing the lawnmower from its usual resting place in the rear hallway out the front door. The officers also observed that the refrigerator in the house was running and that the refrigerator door was ajar.

Dufault told police that the beer found in the defendant's possession was identical to the Falstaff beer that had been stored in his mother's refrigerator. He also identified the jewelry as his grandmother's, which had been kept in an upstairs bedroom, and the lawnmower as the one his mother left in the rear hallway. As far as Dufault could tell, nothing else had been taken.

The test for deciding whether a motion for a required finding was properly denied is "whether, after viewing the evidence [and the fair inferences therefrom] in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia,* 443 U.S. 307, 318-319 (1979) (emphasis in original). See *Commonwealth* v. *Hilton, supra* at 64-65, quoting from *Curley* v. *United States,* 160 F.2d 229, 232-233 (D.C. Cir.), cert. denied, 331 U.S. 837 (1947). Here, the Commonwealth comfortably satisfied its burden, presenting sufficient evidence — which did not deteriorate during the presentation of the defendant's case-in-chief,[1] *Commonwealth* v. *Doucette,* 408 Mass. 454, 462 (1990) — to convict the defendant of the crimes charged.

The gist of the defendant's argument is that the Com-

[1]The defense case actually strengthened that of the prosecution. The defendant admitted to entering the house and removing the beer, jewelry, and lawnmower. He claimed only that he did not break in. According to the defendant, the doors of the house already had been forced open when he arrived.

monwealth failed to introduce sufficient evidence linking him to the break-in. While the defendant indisputably was in possession of property taken from the house at the time of his arrest, he asserts that, based on the Commonwealth's case-in-chief, the jury would have had to engage in impermissible conjecture in order to conclude that the defendant himself had taken it. See *Berry* v. *Commonwealth*, 393 Mass. 793, 795-796 (1985); *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989).

Yet the defendant's mere possession of recently stolen property may be relied upon by the jury as evidence that he had stolen it. See *Commonwealth* v. *Grace*, 265 Mass. 119, 124 (1928); *Commonwealth* v. *Subilosky*, 352 Mass. 153, 166 (1967). See also *Commonwealth* v. *Kirkpatrick*, 26 Mass. App. Ct. 595, 599 (1988). Further, the police testimony that the beer, when recovered, was still cold, coupled with the fact that the identical type of beer had been taken from a functioning refrigerator, provided a solid basis for inferring that the defendant had stolen the beer, rather than merely finding it on the street (where, presumably, it would have had a chance to reach the ambient temperature on the summer day on which the defendant was arrested). Similarly, the defendant's capture proximate to the burgled house also pointed to his direct involvement in the theft. Finally, the fact that every one of the very items removed from the house was found in the defendant's possession militated against the inference that the defendant had merely stumbled upon the jetsam of some other, hypothetical burglar.

In his brief, the defendant relies heavily upon a familiar axiom: " 'When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof.' *Commonwealth* v. *Croft*, 345 Mass. 143, 145 (1962), quoting from *Commonwealth* v. *O'Brien*, 305 Mass. 393, 400 (1940)." *Commonwealth* v. *Eramo*, 377 Mass. 912, 913 (1979). That principle does not, however, avail the defendant, for two reasons. First, the evidence and inferences here were not as equally probative of innocence as of guilt. The "equal probabilities" asserted by the defendant were either entirely speculative and flamboyantly implausible (he might have found the stolen goods just after the real thief had incomprehensibly stashed or abandoned them); inconsistent with reason and experience (the beer may have become as cold by having been left outside overnight in the summertime as by having been stored in a refrigerator); or contrary to the evidence

(though homeless and indigent, he may have purchased the stolen items from the real thief).

Second, confusion as to the application and meaning of this frequently invoked principle is as widespread as its incantation. This is particularly so in the context of a motion for a required finding of not guilty, which must surmount the prosecution-friendly *Latimore* standard.[2] In fact, the concept pertains only to situations in which any view of the Commonwealth's evidence, however favorable, still requires a leap of conjecture with respect to essential elements of the crime charged in order to obtain a conviction. Here there was no evidentiary gap, merely a question of the weight of a continuous chain of circumstantial evidence strongly connecting the defendant directly to the crimes charged. See *Commonwealth* v. *Donovan*, 395 Mass. 20, 25 (1985) (jury's verdict lawfully may be premised exclusively on circumstantial evidence). While the jury would have been entitled to reject the Commonwealth's theory, its case was properly submitted to the fact finders for consideration and rationally supported convictions beyond a reasonable doubt.

Proof in a criminal trial need not exclude all possible exculpatory interpretations of the evidence. See *Commonwealth* v. *Merola*, 405 Mass. 529, 533-534 (1989). Along the same lines, it is not necessary for the Commonwealth to negate the possibility that someone other than the defendant might have committed the crime charged. See *Commonwealth* v. *Casale*, 381 Mass. 167, 175 (1980). Consonant with these principles, we conclude that the Commonwealth's case here was amply sufficient to present to the jury. The defendant's motion for a required finding of not guilty at the close of the Commonwealth's case (he did not renew it at the close of all the evidence, but see note 1, *supra*) was properly denied.

*Judgments affirmed.*

---

[2]The cases upon which the defendant relies do not reflect the *Latimore* corollary that " '[n]either juries nor judges are required to divorce themselves of common sense, but rather should apply to facts which they find proven such reasonable inferences as are justified in the light of their experience as to the natural inclinations of human beings.' *United States* v. *Smith*, 680 F.2d 255, 260 (1st. Cir. 1982), cert. denied, 459 U.S. 1110 (1983)." *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 618 (1990), *S.C.*, 410 Mass. 1005 (1991).