COMMONWEALTH *vs.* SCOTT A. AIELLO.

No. 98-P-1383.

Middlesex. January 10, 2000. - June 23, 2000.

Present: LAURENCE, DREBEN, & BECK, JJ.

*Controlled Substances. Practice, Criminal,* Required finding.

At the trial of a complaint for possession of marijuana, the Commonwealth's evidence was insufficient to link the defendant, the driver of a car, to a marijuana "roach" found in a cigarette box in the back seat of the car or marijuana found on the person of the front seat passenger at the police station after his arrest. [498-499]

COMPLAINT received and sworn to in the Concord Division of the District Court Department on September 22, 1997.

The case was tried before *Paul L. McGill,* J.

*Laura P. Malouf* for the defendant.

*Maura A. Looney,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. As a result of a traffic violation, Lincoln police officers stopped the vehicle the defendant was driving. In the course of the ensuing investigation, a used cigarette butt containing marijuana was found in a Newport cigarette box in the back seat, and more marijuana was found in the crotch area of a front seat passenger. The defendant was charged, among other offenses,[1] with possession of marijuana. He was convicted of that offense. In this appeal, he urges numerous errors including the claim that the District Court judge should have allowed his motion for a required finding of not guilty. As we agree that the evidence was insufficient to link the defendant to the drugs found in the vehicle or on the person of the passenger, we set forth the evidence in some detail in the light most favorable to

---

[1]He was also charged with possession of a firearm and of ammunition but was found not guilty of those offenses. See note 2, *infra.*

Commonwealth *v.* Aiello.

the Commonwealth. *Commonwealth* v. *Garcia,* 409 Mass. 675, 686 (1991).

Early in the morning, about 4:00 A.M., on August 31, 1997, two officers of the Lincoln police department, Sean Kennedy and Thomas Hennessey, saw a white Chevrolet Camaro traveling in excess of the speed limit and weaving in and out of its lane. They stopped the vehicle. When Kennedy approached the car, he smelled "a strong odor of marijuana." The defendant was the driver of the car; there were two passengers, one in front and one in the rear. Kennedy asked all three for identification.

Because of the odor of marijuana, Kennedy asked the defendant, whose eyes were red and glassy, to leave the car and perform field sobriety tests. Kennedy, who was trained to give such tests, determined that the defendant was not impaired, and permitted him to reenter the vehicle. Kennedy then returned to his police vehicle and checked the three identifications for outstanding warrants. The officers noticed that the defendant, during this period, appeared nervous as he leaned outside his window and looked back at the cruiser approximately six times.

Both passengers were found to have outstanding warrants and were arrested. Kennedy informed the defendant of this fact and asked him to leave the vehicle. He also sought permission, in light of the strong odor of marijuana, to search the car. The defendant agreed and gave Kennedy the keys. He mentioned to Kennedy that he had told the two passengers "that he didn't want anything stuffed in his car," and "to keep it on themselves because he didn't want to take the fall for anything."

During his search, Kennedy found a loaded gun under the floor mat beneath the front passenger seat, and thereupon arrested the defendant.[2] On a further search, Kennedy found a Newport cigarette box in the back seat inside of which was a "smoked roach."

The three occupants of the Camaro were taken separately by officers to the police station where the front seat passenger was asked if he had anything on his person. He pulled out a wooden box from his crotch area that contained hashish (marijuana), as well as a pipe.

---

[2]There was testimony by the back seat passenger that the gun was his and the defendant knew nothing about it. Although this evidence was struck after the back seat passenger exercised his right under the Fifth Amendment to the United States Constitution after direct examination by the defendant, the jury may, nevertheless, have been influenced by this testimony. See note 1, *supra.*

"To sustain its burden of proof, the Commonwealth had to prove that the defendant either actually possessed or constructively possessed the [marijuana]. Because the evidence does not suggest actual possession, the Commonwealth had to prove constructive possession. Specifically, the Commonwealth needed evidence of 'knowledge coupled with the ability and intention to exercise dominion and control.' *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 567 (1980)." *Commonwealth* v. *Daley*, 423 Mass. 747, 752 (1996). *Commonwealth* v. *Manzanillo*, 37 Mass. App. Ct. 24, 27 (1994). Knowledge of the drugs in the car may be inferred from the evidence that Kennedy noticed a strong smell of marijuana, see *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. at 567, and from the defendant's statement to his passengers that he did not want to take the blame for anything left by them in the car.

"Knowledge of the controlled substance, however, is not the equivalent of possession," *ibid.*, and proof is needed that the defendant had the ability and intention to exercise dominion and control over the drugs. Although possession "may often be inferred from proximity conjoined with knowledge, . . . the reasonableness of such an inference depends upon the circumstances." *Id.* at 567-568. Here, where there was no evidence connecting the defendant to the "roach" in the back seat — Kennedy testified that he did not notice any smell of marijuana coming from the defendant's breath or his person — the evidence fell short of making out a case of possession against the defendant. While knowledge of the presence of drugs or of weapons more readily warrants an inference of control against a driver[3] than a passenger, see *Commonwealth* v. *Gray*, 5 Mass. App. Ct. 296, 299 (1977); *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. at 568; compare *Commonwealth* v. *Sanchez*, 40 Mass. App. Ct. 411, 416 (1996), some additional evidence beyond that of showing mere knowledge was necessary here to warrant a reasonable inference of possession by the defendant.

The Commonwealth argues that there is such additional evidence by reason of "the defendant's suspicious conduct, including looking back at the officers at least six times with half of his body sticking out of the window while the officers were checking for warrants." That the defendant was nervous while waiting for the police to come back after taking the occupants'

---

[3]At trial, there was no evidence of the car's ownership. We do not imply that such evidence would change the result.

identifications, and that he kept looking back to see if they were returning is not an unusual reaction and does not provide the kind of additional evidence that is required to support a finding that the defendant was able to exercise control over the drugs. Moreover, there was no evidence that would warrant an inference of the required intent to exercise such control. Compare *Commonwealth* v. *Sadberry*, 44 Mass. App. Ct. 934, 936 (1998).

What we have said with respect to the drugs in the vehicle applies with even greater force to the drugs later found at the police station in the crotch area of the front seat passenger. There was no evidence of any kind linking the defendant to those drugs.[4]

Since we conclude that the defendant was entitled to the allowance of his motion for a required finding of not guilty, we do not reach the other issues raised in his appeal.

The judgment is reversed, the verdict is set aside, and judgment is to be entered for the defendant.

*So ordered.*

---

[4]Although the trial judge at one point stated that the defendant was not charged with possession of those drugs, his instructions to the jury did not limit them to a consideration of the marijuana found in the back seat of the car.