### COMMONWEALTH *VS.* ROMEO SALADIN.

No. 06-P-1983.

Suffolk. October 11, 2007. - December 30, 2008.

Present: PERRETTA, BERRY, & TRAINOR, JJ.

*Abuse Prevention. Due Process of Law,* Abuse prevention. *Practice, Criminal,* Instructions to jury. *Intentional Conduct. Words,* "Voluntary," "No contact."

In an appeal from the trial of a criminal complaint charging the defendant with violating an abuse prevention order issued pursuant to G. L. c. 209A, § 7, where the case was submitted to the jury only on the question whether the defendant had violated the provision of the order requiring him to stay away from a residence located at a certain address, there was no merit to the defendant's argument that the Commonwealth failed to prove that he violated the "no contact" provision of the order [418], or that he was entitled to a jury instruction concerning the allegedly conflicting evidence whether the victim had moved from that residence [418-419] or to an instruction that a conviction could not be premised on the "no contact" provision of the order [420-421].

At the trial of a criminal complaint charging the defendant with violating an abuse prevention order issued pursuant to G. L. c. 209A, § 7, there was no error in the judge's instructions to the jury regarding intent. [419-420]

A criminal defendant failed to demonstrate ineffective assistance of trial counsel arising from counsel's failure to call the defendant as a witness at trial. [421]

There was no merit to a criminal defendant's contention that enforcement of an abuse prevention order issued against him pursuant to G. L. c. 209A violated his fundamental constitutional rights or was overbroad and vague. [421-422]

COMPLAINT received and sworn to in the Dorchester Division of the Boston Municipal Court Department on September 15, 2005.

The case was tried before *John T. Lu,* J.

*Michael Bedard* for the defendant.

*Joseph M. Ditkoff,* Assistant District Attorney (*Jessica L. Tripp,* Assistant District Attorney, with him) for the Commonwealth.

PERRETTA, J. After a jury trial in the Boston Municipal Court, the defendant was convicted on a complaint charging him with violating a restraining order issued pursuant to G. L. c. 209A, § 7. On appeal, the defendant argues that (1) the verdict was against the weight of the evidence; (2) the judge's jury instructions were erroneous in several respects; (3) trial counsel was ineffective by reason of his failure to call the defendant to testify on his own behalf; and (4) application of G. L. c. 209A to him was unconstitutional. We affirm the judgment.

1. *The evidence.* On July 20, 2005, Latoya Leathers sought and obtained an ex parte abuse prevention order which placed the following restrictions upon the defendant: (1) that he not abuse Leathers; (2) that he not contact Leathers; (3) that he immediately leave and stay away from Leathers's residence at "27 Maxwell Street, Dorch. #1 or wherever else [he] may have reason to know [Leathers] may reside"; (4) that he not contact Leathers's children; (5) that he surrender all firearms in his possession; and (6) that he stay away from 30 Moultrie Street, located in the Dorchester section of Boston. On August 5, 2005, after a hearing during which the defendant appeared, the order was extended for one year with two additional conditions: that the defendant stay at least one hundred yards away from Leathers as well as from the entirety of 27 Maxwell Street.[1] On November 29, 2005, the abuse prevention order was vacated at Leathers's request.

On September 15, 2005, a little over one month after the order was extended, Boston police Officers Richard Slamin and Leiry Melendez responded to a 911 emergency call and proceeded to 27 Maxwell Street. There they spoke to Leathers, who was standing outside and across the street from the building. Leathers informed the officers that she "had recently moved out" of 27 Maxwell Street, was currently residing at 30 Moultrie Street, and had returned to 27 Maxwell Street to "get her stuff." She provided the officers with the abuse prevention order requiring the defendant to stay away from the building at 27 Maxwell Street as well as from 30 Moultrie Street.

---

[1] It appears that the condition providing that the defendant stay away from the entirety of 27 Maxwell Street was based upon the fact that 27 Maxwell Street was a multifamily structure.

After speaking with Leathers, the officers entered apartment one at 27 Maxwell Street, where they found and arrested the defendant.[2] They estimated that the distance between where Leathers was standing and where the defendant was located inside her apartment was about forty or fifty yards.

Leathers's aunt testified on behalf of the defendant. She related that she and the defendant were friends. He would occasionally call her to ask about his and Leathers's child. The aunt also related that in July, 2005, she helped Leathers and her children relocate from 27 Maxwell Street to her parents' house at 30 Moultrie Street.

At the conclusion of the evidence, the judge ruled that the evidence was insufficient to sustain a guilty verdict on the theory that the defendant had violated the no-contact provision of the abuse prevention order. Rather, he submitted the case to the jury on the sole question whether the defendant had violated paragraph three of the order requiring him to "leave and stay away from [Leathers's] residence . . . located at 27 Maxwell Street."

2. *Discussion.* As earlier noted, the defendant makes several arguments on appeal. Our conclusion that none of them warrants reversal of his conviction is based upon the following.

a. *The sufficiency of the evidence.* In claiming that the jury's verdict was against the weight of the evidence, the defendant argues that the Commonwealth failed to prove that on September 15, 2005, he either had contact with Leathers or had failed to stay 100 yards away from her.[3] Because the only question before the jury was whether the defendant had violated the mandate that he "leave and stay away from [Leathers's] residence . . . located at 27 Maxwell Street," his argument regarding contact is irrelevant and need not be considered.

In a related argument, the defendant also contends that the

---

[2]The fact that the defendant was arrested on a default warrant was excluded from evidence pursuant to the defendant's motion. The jury also was unaware of the fact that on November 16, 2005, Leathers secured the defendant's release from jail by posting cash bail in the amount of $750.

[3]While maintaining that the evidence was sufficient to put the issue of the defendant's guilt to the jury, the Commonwealth also argues that this question is not properly before us due to procedural defects. For purposes of finality, we assume without deciding that the defendant's challenge to the sufficiency of the evidence is properly before us.

evidence tended to sustain either of two inconsistent proposi-
tions, namely, that Leathers still resided at 27 Maxwell Street,
or that she had moved out of that building before the incident in
question. On that basis, he maintains that the state of the evi-
dence entitled him to have the jury instructed that "[w]hen the
evidence tends equally to sustain either of two inconsistent
propositions, neither of them can be said to have been estab-
lished by legitimate proof." See *Commonwealth* v. *Fancy*, 349
Mass. 196, 200 (1965).

This principle of law typically is invoked to challenge the suf-
ficiency of the evidence, see, e.g., *Commonwealth* v. *Croft*, 345
Mass. 143, 145 (1962); *Commonwealth* v. *Latney*, 44 Mass. App.
Ct. 423, 426 (1998), and is not a recommended or favored jury
instruction. See *Commonwealth* v. *Beverly*, 389 Mass. 866, 873
(1983) ("reference to the consequences of an even balance in the
evidence preferably should not be included in a charge on reason-
able doubt"). The preference to deny giving such an instruction
is based upon recognition of the fact that a "jury might improperly
infer from such language that, if the even balance tilted just
slightly against the defendant, a guilty verdict would be war-
ranted." *Id.* at 872-873.

Simply put, the defendant was not entitled to such an instruc-
tion. The principle relied on by him is only applicable in those
cases where to support a conviction "any view of the Com-
monwealth's evidence, however favorable, still requires a leap of
conjecture with respect to essential elements of the crime charged."
*Commonwealth* v. *Latney*, 44 Mass. App. Ct. at 426.

Based on the terms of the order in effect on September 15,
2005, the evidence presented, and the sole question put to the
jury — whether the defendant violated the order by failing to
"leave and stay away from [Leathers's] residence . . . located at
27 Maxwell Street" — we conclude that the defendant was not
entitled to his requested instruction.

b. *The jury instructions.* The defendant claims two errors in
respect to the judge's instructions to the jury.

i. *Voluntariness and intent.* It is the defendant's contention
that the judge should have instructed the jury that "the act" that
the Commonwealth sought to prosecute as a violation of the
abuse prevention order must have been shown to be intentional

*and* voluntary. His argument is that the judge's failure so to instruct the jury permitted them to convict him merely for his intended presence at 27 Maxwell Street, the act he intended, without evidence showing that voluntarily violated the order. In making this argument, the defendant erroneously equates proof of voluntariness with proof that he knew Leathers was across the way from 27 Maxwell Street while he was at that address.

We see no error in the instruction given by the judge in which he stated:

> "[T]he Commonwealth [must] prove the intent required for the offense. In determining whether the defendant acted intentionally or had the intent required you should give the word its ordinary meaning of acting voluntarily and deliberately and not because of accident or negligence. It is not necessary that the defendant knew that he was violating the law, but it is necessary that he intended the act to occur which constitutes the offense. In other words, he cannot be convicted for an accidental act."

The instruction given not only was identical in all material respects to that set out in Instruction 3:04 of the Model Jury Instructions for Use in the District Court (1995), but also more than adequately conveyed to the jury the fact that "[t]he only intent required is that the defendant voluntarily intended the act that constituted the violation." *Commonwealth* v. *Kendrick*, 446 Mass. 72, 76 n.6 (2006), citing *Commonwealth* v. *Silva*, 431 Mass. 194, 200 (2000). The undisputed evidence showed that the defendant was voluntarily present inside the building located at 27 Maxwell Street.

ii. *The "no contact" provision of the order.* The defendant's argument on this point, as best we understand it, is that the judge should have granted his request that the jury be informed that a conviction of the defendant could not be premised on the "no contact" provision of the abuse prevention order. The argument fails.

In the first instance, the judge informed the jury that the only question before them was whether the defendant had violated the mandate that he "leave and stay away from [Leathers's] residence . . . located at 27 Maxwell Street." Second, the judge informed the parties of his decision to so instruct the jury before

they made their closing arguments. The parties, therefore, were able to focus their summations on the question whether the defendant violated the "leave and remain away from" portion of the order. Third, we presume, as we must, that the jury followed the judge's instructions in their deliberations. See, e.g., *Commonwealth* v. *Tennison*, 440 Mass. 553, 558 (2003).

Based upon these circumstances, we see little to no risk that the jury's verdict was based on anything other than the sole question before them.

c. *Ineffective assistance of counsel.* The defendant claims that his trial counsel was ineffective by reason of his failure to call him as a witness. The claim lacks merit. Had the defendant's trial attorney called the defendant to testify that he did not know that Leathers was in the area of 27 Maxwell Street while he was also there, his credibility was subject to substantial risk of impeachment by reason of his prior record of criminal convictions, one of which included a conviction for manslaughter. Moreover, the testimony would have been irrelevant to the sole question before the jury — his violation of the order to leave and stay away from the premises — which did not depend in any manner on Leathers's presence in the area or the defendant's knowledge of her presence.

d. *Constitutional claims.* It is the defendant's contention that the enforcement of the order issued against him pursuant to G. L. c. 209A violated his fundamental constitutional rights and, as applied to him, is overbroad and vague.[4] His argument appears to be premised on the fact that because Leathers had moved from 27 Maxwell Street to 30 Moultrie Street prior to his arrest on September 15, 2005, he had the fundamental and constitutionally protected right to return to his Maxwell Street residence.

Although the defendant does not identify any fundamental and constitutional right recognized as matter of law, his assertion appears to be based on the flawed premise that a person has the unconditional right to live in his own residence. It is settled that a defendant's right to remain in his or her residence may be sus-

---

[4]As pointed out by the Commonwealth, the defendant raises this claim for the first time on appeal. In the interest of finality and judicial economy, we address the argument.

pended by reason of an abuse prevention order obtained in accordance with due process principles. See *Commonwealth* v. *Gordon*, 407 Mass. 340, 347-348 (1990). The defendant was present in the court room and was provided an opportunity to be heard when the order was extended on August 5, 2005, for one year.

Moreover, we see no support for the proposition that the terms of the order of August 5, 2005, were vague or overbroad because they purportedly failed to include clear instructions to guide the defendant on the matter of when he could return to 27 Maxwell Street or to warn him that he risked violating the order should he move back into 27 Maxwell Street upon his unilateral determination that Leathers had vacated the premise. The order expressly provides: "For good cause, either the Plaintiff or the Defendant may request the Court to modify this Order before its scheduled expiration date." The outstanding order is valid and in effect absent judicial modification, and a violation of its terms is a criminal offense. See *Commonwealth* v. *Laskowski*, 40 Mass. App. Ct. 480, 482-483 (1996); *Commonwealth* v. *Rauseo*, 50 Mass. App. Ct. 699, 706 (2001). A person of ordinary intelligence could not have reasonably understood that the order requiring him to stay away from 27 Maxwell Street would sanction his return to the apartment located at that address. We think such an understanding unreasonable, if not contrived, in view of the clear language of the order, which had issued only one month earlier, and the fact that on September 15, 2005, some of Leathers's belongings remained in the apartment. See *Commonwealth* v. *Butler*, 40 Mass. App. Ct. 906, 907 (1996).

*Judgment affirmed.*