COMMONWEALTH *vs.* PEDRO ALMEIDA.

Suffolk. April 8, 1980. — September 2, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Firearms. Practice, Criminal,* Directed verdict.

At the trial of a defendant charged with carrying a firearm on his person
in violation of G. L. c. 269, § 10, evidence that a gun was found in a
covered console of an automobile which the defendant had borrowed
earlier in the evening was insufficient to warrant a finding that the de-
fendant knew the gun was in the automobile. [421-423]

COMPLAINT received and sworn to in the Municipal Court
of the City of Boston on July 9, 1976.

On appeal to the Superior Court, and after an interlocu-
tory appeal to the Supreme Judicial Court reported at 373
Mass. 266 (1977), the case was tried before *Spring,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Roger Geller* for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the
Commonwealth.

QUIRICO, J. The defendant was convicted in 1976 in the
Municipal Court of the City of Boston on two complaints:
one charging him with the crime of carrying a firearm on
his person in violation of G. L. c. 269, § 10, and the other
charging him with the crime of possession of a firearm the
serial number of which was defaced in violation of G. L.
c. 269, § 11C. He appealed to the Superior Court. A judge
in that court denied his motion to suppress, and a single
justice of this court granted the defendant's request for
leave to appeal from that order. See G. L. c. 278, § 28E.
We affirmed the order in *Commonwealth* v. *Almeida,* 373
Mass. 266 (1977).

Subsequently, a trial was held in the Superior Court. At the close of the Commonwealth's case, the defendant moved for a directed verdict of not guilty, and he renewed the motion at the close of all the evidence. (See now Mass. R. Crim. P. 25, 378 Mass. 896 [1979]). The judge denied the motion on both occasions. A jury convicted the defendant on the carrying charge under § 10, and acquitted him on the § 11C charge.

The defendant appealed from that conviction to the Appeals Court. At oral argument, the Appeals Court, on its own motion, questioned the fact that the complaint charged possession "on his person" rather than "in a vehicle," whereas the proof at trial related to the latter offense. The parties were granted leave to brief the issue and oral argument was rescheduled for three days later. The Appeals Court subsequently issued a rescript opinion reversing the defendant's conviction on the ground that G. L. c. 269, § 10 (*a*), prohibits two separate offenses, see *Commonwealth* v. *Rider*, 8 Mass. App. Ct. 775, 777-778 (1979), and that a verdict of not guilty should have been directed because there was no evidence that the defendant carried the gun "on his person" and therefore the Commonwealth had failed "to prove the only offence charged." *Commonwealth* v. *Almeida*, 9 Mass. App. Ct. 813 (1980). We granted the Commonwealth's application for further appellate review.

We need not reach the questions whether G. L. c. 269, § 10 (*a*), comprises one or two offenses, and whether the defendant waived objection to the form of the complaint, as the Commonwealth argues. Our reading of the evidence leads us to conclude that there was not sufficient evidence of possession either "on his person" or "in a vehicle" to justify denial of the defendant's motion for a directed verdict. We therefore affirm the result reached by the Appeals Court.

We summarize the evidence presented prior to the close of the Commonwealth's case. About midnight on July 9, 1976, police Officers Michael Feeney and Arthur Ericson were driving on Back Street, which runs parallel to Beacon Street in Boston's Back Bay area. They noticed the defend-

ant seated in a parked car with the engine running. As Officer Feeney approached the vehicle, he noticed that the defendant "shifted in his seat . . . to move over towards the door itself." As he approached, he saw that the defendant was looking at him. Officer Feeney drew his service revolver, and he believed the defendant saw him do so. He asked the defendant for his license and registration, and the defendant lifted up the top of a console on the front seat, withdrew his wallet, and gave Officer Feeney his license. Officer Feeney did not see the defendant look into the console.

The defendant did not produce a registration, so Officer Feeney ordered him out of the car. When the light inside the car went on, Officer Feeney noticed a gun holster under the front seat. He lifted the console, found the gun inside, and arrested the defendant.

Three nights later, one Richard Leek came to the police station to claim the car. He told Officer Feeney that he had loaned the car to the defendant on the evening of July 9.[1]

We agree with the Appeals Court that there was no evidence that the defendant carried the gun on his person, as the complaint alleged. See *Commonwealth v. Seay,* 376 Mass. 735, 737 (1978). Even if we were to treat the charge to be that the defendant carried a firearm "under his control in a vehicle" as prohibited by G. L. c. 269, § 10 (*a*), the Commonwealth must prove that he had knowledge that the gun was in the vehicle. *Commonwealth v. Bennefield,* 373 Mass. 452, 453-454 (1977). *Commonwealth v. Albano,* 373 Mass. 132, 133-135 (1977). *Commonwealth v. Boone,* 356 Mass. 85, 87 (1969). See *Commonwealth v. Clarke,* 350 Mass. 721, 722 (1966). At the close of the Commonwealth's

---

[1] The defendant presented evidence that Leek had not responded to attempts to have him testify, that Leek had previously been convicted of possession of the same type of gun found in the car, and that Leek owned the car. The defendant's wife testified that, on the evening her husband was arrested, she telephoned Leek, who came to her house at 4 A.M. and told her that the "illegal gun" was in the car. Leek said he had only one month left on probation and thus did not wish to "own up to the gun in court," but he "got a lawyer" for the defendant "the first time he went to court."

case, there was no evidence that the defendant saw the gun or knew of its presence in the automobile. There was no evidence of the size of the console, or whether the gun was easily visible, to permit the jury to infer that the defendant would likely have seen or felt the gun when he put his wallet into the console.[2] The jury would have had to speculate that the defendant knew the gun was in the covered console of a car he borrowed that evening, merely from his presence in that car. We believe the evidence was insufficient "to warrant a reasonable inference of personal knowledge of the presence of the gun." *Bennefield, supra* at 453. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979).

In light of this holding, we need not consider evidence presented after the Commonwealth rested. *Commonwealth* v. *Kelley,* 370 Mass. 147, 149-150 & n.1 (1976). We also do not consider the other errors alleged in this appeal.

*Judgment of the Superior Court reversed.*

*Verdict set aside.*

*Judgment for the defendant.*

---

[2] We upheld the denial of the motion to suppress in the Superior Court expressly on a "stop and frisk" rationale under *Terry* v. *Ohio,* 392 U.S. 1 (1968), and related cases, and not on a probable cause rationale. *Commonwealth* v. *Almeida,* 373 Mass. 266, 269-270 (1977). The question there was whether the police could reasonably believe "that their safety was threatened during the 'stop'." *Id.* at 272. We concluded that the police had the right to "stop" the defendant in the circumstances known to them, and to ask him to step from the car when he could not produce the registration. When they saw the gun holster and loaded clip, they had the right to search the console. *Id.* at 271-273.

The *Terry* test is not whether the officer was "absolutely certain that the individual is armed" but "whether a reasonably prudent [person] in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger." *Almeida, supra* at 271, quoting from *Commonwealth* v. *Silva,* 366 Mass. 402, 406 (1974). The question presented here is whether there was enough evidence to survive a motion for a directed verdict of not guilty as to every element of the crime, including knowledge of the presence of the gun.