NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-253                                           Appeals Court

COMMONWEALTH  vs.  RAFAEL SANTANA.

No. 18-P-253.

Middlesex.      January 2, 2019. - May 8, 2019.

Present:  Green, C.J., Shin, & Englander, JJ.


Controlled Substances.  Motor Vehicle.  Evidence, Constructive
    possession.  Practice, Criminal, Required finding.


    Complaint received and sworn to in the Lowell Division of
the District Court Department on September 19, 2016.

    The case was tried before J. Elizabeth Cremens, J.


    Philip Weber for the defendant.
    Gregory J. Galizio, Assistant District Attorney, for the
Commonwealth.


    ENGLANDER, J.  The defendant was convicted by a jury of

possession of cocaine based on a theory of constructive

possession, and the issue before us is the sufficiency of the

proof.  The cocaine was found in the glove compartment of a car

in which the defendant was the driver and sole occupant, after

the defendant was pulled over for a traffic violation.  The car

was not registered to the defendant, and the cocaine was viewed by the police officer only because, after he asked the defendant for his license and the vehicle registration, the defendant opened the glove compartment to look for the registration. The totality of the evidence was not sufficient to find that the defendant had previous knowledge of the cocaine beyond a reasonable doubt, and we accordingly reverse.

Background. Based on the evidence at trial, the jury could have reasonably found the following. In the early morning of September 18, 2016, the defendant was driving a Honda automobile on a street in Lowell. The Honda strayed into the opposite travel lane, almost striking a police vehicle being driven by Officer Jerome Moore. Officer Moore thereafter stopped the Honda and approached the defendant. Officer Moore testified as follows:

Q.: "Now, when you encountered the [d]efendant, did you ask him about the driving?"

A.: "I did."

Q.: "And what did he say?"

A.: "He said he didn't know what I was talking about, and that he had just replaced the axles in his car."

Q.: "And did you ask him for his license or registration?"

A.: "I did."

Q.: "And what did he do when you asked him that?"

A.:   "He opened up the glove box, to grab the registration."

Q.:   "And while he was opening up the glove box, did you see anything in the glove box?"

A.:   "Yes."

Q.:   "And what was that?"

A.:   "It was a bag, a fairly small bag of white powdery substance, sitting on the top of all the paperwork."

Q.:   "And at that point, what did it appear to be?" . . .

A.:   "It appeared to be cocaine."

Q.:   "And after you saw that bag, did you ask the [d]efendant about it?"

A.:   "I -- I did."

Q.:   "And what did he say?"

A.:   "He didn't say anything.  He started putting papers over it, so I couldn't see it."

Q.:   "And at this point, what did you do?"

A.:   "I -- I ordered him out of the vehicle."

Subsequent searches of the Honda also revealed a digital scale and an unfired nine millimeter round in the glove compartment, and a nine millimeter pistol located under the passenger seat.[1]  Thirteen rounds of ammunition were found inside a backpack in the trunk.  In the rear seat of the Honda there

---

[1] The Commonwealth does not suggest that the pistol was in plain view.  It was discovered during the inventory search of the car.

were two car seats. There was also a "pink child sized guitar" in the passenger compartment, and clothing on the floor.

On cross-examination Officer Moore testified that the defendant pulled over without incident, that the defendant complied with his instructions, and that the defendant did not appear agitated or "to be concealing anything." The officer also confirmed that he did not ask the defendant to open the glove compartment, but rather the defendant did so "in response to [the officer's] question to produce the registration."

The car was not registered to the defendant, but to one Francesca Rosario, who resided on "Pine Street," presumably in Lowell. The defendant had a different address, on Cork Street. The prosecution introduced no additional evidence that linked the defendant to any of the items in the car.

The defendant was arrested and charged with carrying a firearm without a license, possession of ammunition without a firearm identification card, and possession of a class B drug with intent to distribute.[2] At trial, the judge denied the defendant's motion for required findings, which argued among other things that the Commonwealth had not adduced sufficient evidence to establish constructive possession. The jury found

---

[2] The Commonwealth points out that, after the officer advised the defendant that he would be charged with drug trafficking, the defendant swore at the officer. We do not consider this evidence probative of the possession charge.

the defendant not guilty of possession with intent to distribute, but guilty of the lesser included offense of possession of cocaine. The jury also returned not guilty verdicts on the gun and ammunition charges.

Discussion. The test for sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 318-319 (1979).

A person who is not in actual possession of contraband can nonetheless be found in constructive possession, and therefore guilty of a possession crime. Commonwealth v. Ortega, 441 Mass. 170, 174 (2004). To show constructive possession, the Commonwealth must show that the defendant knew of the existence of the item, and had the ability and intent to exercise dominion and control over it. Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989). These elements can be shown by circumstantial evidence, and the reasonable inferences from such evidence. Commonwealth v. LaPerle, 19 Mass. App. Ct. 424, 426 (1985). However, mere presence in proximity to the contraband is not sufficient to establish constructive possession. Commonwealth v. Romero, 464 Mass. 648, 653 (2013), citing Commonwealth v. Albano, 373 Mass. 132, 134 (1977). Rather, our cases emphasize

the need for "other incriminating evidence" -- a so-called "plus factor" -- in addition to evidence of proximity (quotation and citation omitted).  Ortega, supra.  This additional evidence must support an inference, among others, that the defendant had knowledge of the contraband.  The requirement that the Commonwealth demonstrate a plus factor holds true even where the contraband is found in a car and the defendant is the car's sole occupant.  See Commonwealth v. Almeida, 381 Mass. 420, 423 (1980) (evidence of constructive possession insufficient where it demonstrated only that defendant was lone occupant of vehicle containing contraband).  See also Alicea v. Commonwealth, 410 Mass. 384, 387-388 (1991).

As the cases recognize, a sufficiency of the evidence evaluation for constructive possession is necessarily fact-specific, and turns on the totality of the evidence.  Albano, 373 Mass. at 134.  But while the inquiry is fact-specific, that does not mean that the evaluation is without guiding principles.  There is a body of case law on the subject, and that case law illuminates the importance and the adequacy of various plus factors.  Here the critical question is whether there was sufficient evidence of knowledge -- that the defendant knew of the presence of the cocaine.  The factors that may have relevance to that inquiry include, among others, who owned or had control over the car, whether anyone else was present in the

car, whether the contraband was in plain view or hidden, the demeanor of the defendant, including whether he took any evasive actions, and any additional facts that tend to show that the defendant knew of, or had control of, the contents of the car. See Commonwealth v. Sinforoso, 434 Mass. 320, 328-329 (2001) (defendant's behavior and demeanor provided additional incriminating evidence); Commonwealth v. Bienvenu, 63 Mass. App. Ct. 632, 638-639 (2005) (defendant owned vehicle and contraband was in plain view).

In this case the Commonwealth cites three particular aspects of the evidence: first, the defendant was the driver and sole occupant of the car; second, the defendant stated that he had just replaced the axles in "his" car; and third, after the officer asked about the bag of "white powdery substance" in the glove compartment, the defendant acted evasively by trying to cover the bag with papers.

Under the case law, this evidence does not suffice to establish constructive possession. First, the fact that the defendant was the driver and sole occupant of a car in which contraband was found, where the contraband was not in plain view, is not by itself sufficient. Almeida, 381 Mass. at 423. In Almeida, the police found the defendant alone in a parked car with the engine running. Id. at 421-422. When the defendant could not produce the car's registration he was ordered out of

the car, and the police located a gun in the covered center console of the car, not in plain view.  Id. at 422.  The evidence showed that the car was owned by someone other than the defendant.  Id.  The Supreme Judicial Court ruled on these facts that there was insufficient evidence that the defendant had knowledge of the gun.  Id. at 423.

The Commonwealth suggests that in this case the calculus is different, because unlike in Almeida, here the defendant indicated that he was the "owner" and "caretaker" of the car. We do not find the distinction persuasive here.  The car was not registered to the defendant, but to a woman with a different address than his, and as to whom there was no evidence of any connection.  As a factual matter, the Commonwealth rests its ownership or caretaker contention entirely on Officer Moore's testimony that when first pulled over, the defendant stated that he had just replaced the axles in "his" car.  But while the defendant's replacement of the axles on the car may show that his connection to the car was more than transient, it falls short of showing the sort of exclusive or primary control that would warrant a conclusion that he necessarily had knowledge of the contents of the glove compartment.  This is especially so given the presence of car seats and a child's toy, and the

absence of evidence that the defendant had children.[3]  And in any event, in Romero, the Supreme Judicial Court warned against concluding that presence in and ownership of a car in which contraband was found is sufficient, without more, to establish constructive possession:  "[o]ur extended discussion of the defendant's ownership and operation of the vehicle stems from a concern that naked reliance on these factors comes 'perilously close to endorsing guilt by presence at the scene of contraband, a concept we have disavowed.'"  Romero, 464 Mass. at 658, quoting Commonwealth v. Sespedes, 442 Mass. 95, 102 (2004).

The only additional fact the Commonwealth can rely on is the defendant's effort to conceal the bag of cocaine under some papers, after the defendant opened the glove compartment and after Officer Moore asked him about the bag.  The Commonwealth urges that this is "evasive behavior" of the type relied on in the cases as a sufficient plus factor, but we do not agree. Here the defendant's actions did not provide sufficient evidence of knowledge of the cocaine in advance of when the cocaine was revealed by opening the glove compartment.  To the contrary,

---

[3] As we have observed, the evidence indicated that the defendant did not own the car, as it was registered to someone else.  Moreover, even if the defendant had used a possessive pronoun to describe the car (e.g., "my car"), such a statement still would have been ambiguous, in context, as to whether the defendant was stating that he owned the car, or merely that he was driving it.

there was no evidence of any action by the defendant that showed knowledge in advance -- no agitation, no furtiveness, and no effort to conceal.  Notably, it was the defendant himself who exposed the cocaine by choosing to look in the glove compartment -- he was not directed to do so.  In these circumstances we do not think the defendant's action in attempting to cover the cocaine with paper, after the officer pointed it out, suffices to tip the scales.  The defendant reacted to seeing the cocaine at the same time the officer did; the defendant's actions in these circumstances do not give rise to a reasonable inference, sufficient to support guilt beyond a reasonable doubt, that the defendant had knowledge of the cocaine beforehand.

Our conclusion in this regard is bolstered by the court's reasoning in Alicea.  There the defendant also was the sole occupant of a car that did not belong to him, and he was stopped for a traffic violation.  Alicea, 410 Mass. at 385.  After consenting to a search of the car, the defendant's demeanor changed "remarkably" when the State police trooper began looking inside the driver's side door frame.  Id. at 386.  After the trooper removed a package wrapped in duct tape and began walking toward the defendant, the defendant began to cry and said, "It's not mine, it's not mine."  Id.

On these facts the Alicea court first noted that the defendant's behavior after the trooper found the package and

showed it to him, although "relevant," would not have been sufficient evidence to establish constructive possession: "[w]e find little support for a finding that the defendant knew of the concealed heroin from . . . his reaction when the first trooper showed the package to him." Alicea, at 387. Instead, although the court went on to find sufficient evidence to support constructive possession, it did so only because, before the drugs had been located, the defendant showed "obvious agitation" as the trooper's search moved closer to their hiding place. Id. The court ruled that this behavior "tended to show that [the defendant] knew that there was cause for alarm." Id. at 388.

This case is not Alicea, as it lacks any evidence of "agitation" or "change in demeanor" before the drugs were located. Id. at 387-388. Instead, this case presents only the facts that Alicea said were not sufficient.[4]

The conviction of possession of cocaine must be reversed. We are not unmindful that the jury reached a contrary conclusion, but it is inherent in a sufficiency of the evidence review that, on rare occasions, a jury verdict will be set

---

[4] We do not mean to imply that any and all actions by the defendant after contraband is identified would be insufficient to establish constructive possession. Each set of facts must be reviewed in totality. Certainly some post-discovery conduct -- such as flight or false statements -- could be highly relevant evidence of guilt. Commonwealth v. Sabetti, 411 Mass. 770, 778 (1992).

aside.  <u>Jackson</u>, 443 U.S. at 317 ("a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt").  While a close case, here the evidence of possession that the Commonwealth brought forward at trial was not sufficient.

Accordingly, the judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant.

<u>So ordered</u>.